UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAYVEST GLOBAL MANDATE INC.
f/k/a CAYVEST US EQUITY, INC.

            Plaintiff,

v.

LEWIS ASSET MANAGEMENT CORP.,
LAM OPPORTUNITY FUND, LTD, W.
AUSTIN LEWIS, IV, ANDREW J. KUNAR,
AND CHRISTOPHER WETHERHILL.

            Defendants.

Index No.:   1:10-cv-695 (RMB)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR APPOINTMENT OF RECEIVER AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

**SCHENCK, PRICE, SMITH & KING, LLP**
220 Park Avenue, P.O. Box 991
Florham Park, New Jersey 07932
(973) 539-1000
*Attorneys for Plaintiff*
*Cayvest Global Mandate Inc.*

Michael J. Marotte, Esq.
John P. Campbell, Esq.
*Of Counsel & on the Brief*

# TABLE OF CONTENTS

| | |
|---|---|
| **TABLE OF AUTHORITIES**………………………………………………….. | ii |
| **PRELIMINARY STATEMENT**…………………………………………….. | 1 |
| **STATEMENT OF FACTS**………………………………………………….. | 2 |
| **LEGAL ARGUMENT**……………………………………………………….. | |
|     POINT ONE……………………………………………………………….. | 8 |
|     **A RECEIVER MUST BE APPOINTED TO PROTECT THE FUND'S REMAINING ASSETS AND GUIDE IT THROUGH LIQUIDATION** | |
|     POINT TWO………………………………………………………………. | 10 |
|     **DEFENDANT'S MOTION TO DISMISS MUST BE DENIED** | |
| **CONCLUSION**…………………………………………………………….. | 14 |

# TABLE OF AUTHORITIES

**Cases:** **Pages**

ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. N.Y. 2007) ..............11

Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398 (S.D.N.Y. 2007) ..........................11

Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141 (2nd Cir. 1964) ............. 8-9

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ..................................................................11

Harriman v. I.R.S., 233 F.Supp.2d 451 (E.D.N.Y. 2002)..............................................11

Hishon v. King & Spaulding, 467 U.S. 69 (1984)................................................. 10-11

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).....................................11

Lankenau v. Coggeshall & Hicks, 350 F.2d 61 (2nd Cir. 1965)......................................8

Merritt v. Shuttle, Inc., 245 F. 3d 182 (2d Cir. 2001)...................................................11

Scheuer v. Rhodes, 416 U.S. 232 (1974)......................................................................11

SEC v. American Bd. of Trade, Inc., 830 F.2d 431 (2nd Cir. 1987)................................8

SEC v. Byers, 637 F. Supp. 2d 166 (S.D.N.Y. 2009)....................................................10

SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2nd Cir. 1972) ............................8

## PRELIMINARY STATEMENT

Defendants' motion to dismiss plaintiffs' well-pled complaint is yet another delay tactic to avoid the payment of approximately $2,000,000 in redemption funds to the plaintiff which are more than 2 years overdue. The filing of the unnecessary motion to dismiss is virtually proof enough that the Defendants cannot be trusted to operate the Fund without significant oversight because while they confess to owing substantial sums to the plaintiff, they move to dismiss the very suit that seeks to recover these funds. The reasonable fear now felt by the plaintiff is that the money is long gone. The reasonable request now necessary to recover the potentially lost money is to have a receiver appointed to oversee the Fund and its liquidation.

At the same time, this Court must deny defendants' motion to dismiss. Plaintiffs' Amended Verified Complaint contains more than sufficient facts to make out prima facie claims of Violation of Securities Exchange Act of 1934 (Counts 18 & 19). Defendants have promised, delayed and avoided payment of the redemption funds for years. The recently filed motion is yet another delay tactic and must be denied so that the merits of this matter can be litigated.

## STATEMENT OF FACTS

Plaintiff invested in the LAM Opportunity Fund, Ltd. ("the Fund") and purchased numerous shares in the Fund relying upon defendants' representations. It has been clearly and adequately pled that this investment was as a result of defendants' representations contained in several documents including a Confidential Private Placement Memorandum ("CPPM") dated March 1, 2006, a Subscription Agreement ("SA") entered into between the Fund and Cayvest, and a Due Diligence Questionnaire ("DDQ") dated March 21, 2006 (collectively referred to in the Complaint as the "Offering Documents").

In the interests of judicial economy, plaintiffs do not repeat the well pled facts contained in the Amended Verified Complaint, but instead refer the Court to Exhibit 1 of John P. Campbell's Affirmation in Support of the Cross-Motion and in Opposition to the Motion to Dismiss. The Confidential Private Placement Memorandum dated March 1, 2006 is annexed as Exhibit 2, the Subscription Agreement entered into between the Fund and Cayvest is annexed as Exhibit 3, and the Due Diligence Questionnaire dated March 21, 2006 is annexed as Exhibit 4.

The filing of this securities litigation is on account of the defendants' fraud before plaintiff's purchase of shares. However, the imminent need for this Court to appoint a receiver to oversee the Fund and its supposed liquidation is based upon the fraud before and after the shares were purchased.

On or about August 19, 2008, plaintiff provided a written request for the redemption of all of its shares in the Opportunity Fund to the Opportunity Fund's third party administrator. See Exhibit 5. Plaintiff's request was entirely consistent with the documents controlling the Opportunity Fund's actions and the third-party administrator confirmed the redemption request.

According to the memorandum and agreement controlling the Opportunity Fund, 90% of the Redemption Proceeds owed to Cayvest was to have been paid within ten (10) business days of the Redemption Date and the remaining 10% was to have been paid within thirty (30) business days. However, the Opportunity Fund failed to deliver the nearly $2,000,000 in a timely manner and plaintiff was forced to again demand a redemption.

On November 17, 2008, Mr. Kunar wrote to plaintiff to confirm that LAM, as the Opportunity Fund's investment adviser and on behalf of the Opportunity Fund, had commenced or caused to be commenced the liquidation of the Opportunity Fund's investments or positions in order to fund the redemption of plaintiff's shares in the Opportunity Fund. See Exhibit 6. This was the first of many statements by the defendants claiming to have commenced the liquidation process.

Then, on November 23, 2008, Mr. Lewis expressly confirmed that the "redemption can be made in full by the end of this year" and that the "money is safe." See Exhibit 7. Mr. Lewis again advised on November 25, 2008 that the Fund's Board of Directors had decided to liquidate the Fund and return all current investors' capital in addition to redemption proceeds owed to investors who had previously redeemed their shares. See Exhibit 8.

On December 23, 2008, plaintiff's counsel wrote to Lewis Asset Management Corp and requested written statements of all assets of the Fund, including cash and securities, as of November 1, 2008 and December 22, 2008. It was also requested that LAM identify any distributions or other payments made by the Fund at any time since November 1, 2008. See Exhibit 9.

On March 3, 2009, LAM forwarded a letter to plaintiff's representatives requesting that they execute a confidentially agreement so that LAM could provide information regarding an

investment held by the Fund. In this same letter, LAM conceded "as I continue to liquidate the Fund which is taking a bit longer than expected." See Exhibit 10.

On March 4, 2009, attorneys at Seward & Kissel contacted Michael J. Marotte, Esq. to advise that they were not representing the Fund, had never represented the Fund, and had no knowledge of the matters at hand. See Marotte Certification. Consistent with its pattern of deception, the defendants identified Seward & Kissel as its U.S. legal advisers for the Fund in the Confidential Private Placement Memorandum. See Exhibit 2. Cayvest would not have invested had they known that the fund was not adequately represented.

On March 11, 2009, Austin Lewis advised that the Fund would be able to return to Cayvest "all of its money" within 60-90 days. See Exhibit 11. The information requested on December 23, 2008 was again requested on March 11, 2009.

On March 20, 2009, LAM advised that the total value of the Fund was $2.2 million. LAM also advised that "there have been no monies wired out of the account since the redemption date." See Exhibit 12.

On or about March 30, 2009, LAM and plaintiff agreed that the Fund would provide plaintiff with its redemption proceeds on or before June 30, 2009 and the Fund and or LAM would provide statements for the Fund and an accounting of the value of the Fund and Cayvest's position, in cash and securities as well as a statement of all distributions or payments made by the Fund in the preceding 30 days on April 5, 2009, May 5, 2009 and June 5, 2009. See Exhibit 13.

LAM then made many reports regarding the Fund's value and plaintiff's percentage of ownership until a dramatic drop in the total value followed by a sudden stop in all reporting.

4

On April 7, 2009, LAM reported via email that the account value was $2.11 mm and plaintiff's percentage ownership was 71.5%. See Exhibit 13. On May 5, 2009, LAM reported that the account value was $2.39 mm and plaintiff's percentage ownership was 71.5%. See Exhibit 14. On June 05, 2009, LAM reported that the account value was $3.28 mm and plaintiff's percentage ownership remained at 71.5%. See Exhibit 15. Therefore, Cayvest's redemption funds totaled $2,345,200 as of June 5, 2009.

After plaintiff's counsel renewed demands for the redemption funds via email on June 10, 2009 and June 16, 2009, Austin Lewis advised on June 16, 2009 that:

> …myself and the Board of Directors for LAM have been in constant contact with a particular company regarding a liquidating transaction. We made you aware of our knowledge at the point when we agreed to give us 60 to 90 days more time to liquidate. During this period there has been a new party interested in the acquisition of the company which has pushed back our original time frame. I have contacted the CEO of the company, who is willing to write a letter you the Board of Lewis Asset Management Corp. explaining the situation. I would think that the board would allow you and your client to look at the letter, and to understand that this is a very serious situation. We absolutely intend to return all of the client's money once this transaction is completed. Please understand that we need a transaction to happen in order to return the full redemption amount in US Dollars."

See Austin Lewis Email dated June 16, 2009, Exhibit 15.

On June 23, 2009, Austin Lewis wrote that "[o]ur board had a conference call with the CEO of the company undergoing a transaction and he is writing the letter to LAM it has to go past his corporate attorney so I am expecting it early next week. We will include the letter and the timelines for you as well at the same time. I just wanted to let you know we are working on your requests and will get them to you asap." See Exhibit 15.

On July 08, 2009, LAM represented that the total account value was $3.58 mm and plaintiff's percentage ownership was 71.5%. See Exhibit 16. On August 03, 2009, LAM represented that the account value was $4.13 mm. See Exhibit 17. A Morgan Stanley Report

5

stated that the total market value balance of the Fund as of July 31, 2009 was $4,139,711.71. See Exhibit 17.

On August 11, 2009, nearly a year after plaintiff provided a written request for the redemption of all of its shares and LAM advised that the Fund would be liquidated, Austin Lewis wrote to plaintiff's representatives to advise that the Fund would not be liquidated and confessed that "Lewis Asset Management is now considered an 'insider' to Paid, Inc. ("Paid") by virtue of being the beneficial owner (through the various investment vehicles it manages) of more than ten percent (10%) of the outstanding common stock of Paid." See Exhibit 18.

On November 5, 2009, LAM forwarded Fund statements for August, September and October 2009. LAM advised that the statements were issued by Monarch Capital/Pershing because "we were forced to exit from Morgan Stanley." See Exhibit 19. According to the Monarch Capital Group LLC Brokerage Account Statement for the period 08/06/2009 to 08/31/2009, the account total was only $3,161,959.91. See Exhibit 20. According to the Monarch Capital Group LLC Brokerage Account Statement for the period 09/01/2009 to 09/30/2009, the account total continued to drop to $3,111,857.06. See Exhibit 19. One month later, the ending account value dropped again to $2,732,701.98. See Exhibit 19.

As of December 31, 2009, the account balance was $3,204,684.52. See Exhibit 21. According to the various reports provided by defendants, the Fund's value greatly fluctuated between $2.39 mm in May 2009 and $4.14 mm in August 2009 when Morgan Stanley was administering the Fund. Then, the Fund's value dropped precipitously when the Fund was "forced to exit from Morgan Stanley" and its value was reported as $3.16 mm in August 2009 while Monarch was acting as the administrator. Plaintiffs have not received an account statement since December 2009.

6

The Complaint in this action was initially filed in January 2010.  Thereafter, defendants made numerous promises to liquidate the Fund including a statement on February 5, 2010.  See Exhibit 22.

On April 22, 2010, plaintiff's counsel wrote to defense counsel to advise that plaintiff was "significantly concerned and have reason to suspect that your clients have misappropriated our client's redemption funds.  Therefore, we demand that you immediately provide a sworn affidavit confirming that our client's money is on account in the Fund approximating $3,000,000."  See Exhibit 23.

Defendants failed to respond to this letter but on June 17, 2010, LAM wrote to the plaintiffs to advise that:

> The Directors have, therefore, determined that at this point it is in the best interest of all the investors to place the Fund into voluntary liquidation.  In that regard, the Directors have appointed Leman Management Limited ("Leman"), a Bermuda company, to act as General Administrator.  Furthermore, the Directors have approved the engagement of Mr. Edward Allanby of Leman as Liquidator of the Fund and the plan is for the Fund to be placed into Voluntary Liquidation in July 2010.

See Exhibit 24.

After receiving this correspondence plaintiff requested to be involved in the liquidation – a process promised, postponed and then promised again since November 2008.  See Exhibit 25.  Defendants' denied this simple good faith request on July 8, 2010 adding additional worry that the Fund is beyond saving.  See Exhibit 26.

Accordingly, plaintiff now moves this Court seeking the appointment of a receiver to oversee the liquidation process.

7

## LEGAL ARGUMENT

### *I.   A RECEIVER MUST BE APPOINTED TO PROTECT THE FUND'S REMAINING ASSETS AND GUIDE IT THROUGH LIQUIDATION*

Defendants' fraud has placed plaintiff in a precarious position requiring immediate Court intervention. Plaintiff has been owed some $2,000,000 for more than two years. Defendants have promised and promised to return plaintiff's funds, but it has yet to happen. Defendants previously claimed to start the process to liquidate the Fund on multiple occasions over the span of two years. The liquidation never occurred and the defendants have failed to report upon the Fund's activity since December 2009. Therefore, a receiver is immediately necessary to oversee the Fund and any potentially ongoing liquidation.

It is well settled that this Court has equity jurisdiction to appoint a receiver. See SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2nd Cir. 1972). More specifically, the appointment of trustees or receivers to effectuate the purposes of the federal securities laws has been repeatedly upheld. See Manor Nursing, 458 F.2d at 1105. "Although neither the Securities Act of 1933 nor the Securities Exchange Act of 1934 explicitly vests district courts with the power to appoint trustees or receivers, courts have consistently held that such power exists, where necessary to prevent the dissipation of a defendant's assets pending further action by the court." See SEC v. American Bd. of Trade, Inc., 830 F.2d 431, 436 (2nd Cir. 1987) relying on Lankenau v. Coggeshall & Hicks, 350 F.2d 61, 63 (2nd Cir. 1965).

Here, the appointment of a receiver is required to oversee the Fund and its pending liquidation. The receiver's appointment is necessary to "to help preserve the status quo while the various transactions [are] unraveled . . . to obtain an accurate picture of what transpired." See Manor Nursing, 458 F.2d at 1105. Stated another way, "a primary purpose of appointing a

receiver is to conserve the existing estate." See Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141, 143 (2nd Cir. 1964).

As indicated above, plaintiff sought redemption of its shares in the Fund on or about August 19, 2008. See Exhibit 5. Defendants first advised that the Fund would be liquidated on November 17, 2008. See Exhibit 6. For the months and months that followed, defendants were consistent in promising to liquidate the Fund and consistent in failing to do so. Defendants made promises to liquate and/or return all of plaintiff's funds on November 25, 2008 (Exhibit 8), March 3, 2009 (Exhibit 10), March 11, 2009 (Exhibit 11) March 30, 2009 (Exhibit 13), June 16, 2009 (Exhibit 15), June 23, 2009 (Exhibit 15), August 11, 2009 (Exhibit 18), February 5, 2010 (Exhibit 22), and most recently on June 17, 2010 (Exhibit 24).

Perhaps more importantly (and more troubling), Defendants failed to explain a sudden and severe drop in the total account balance for the Fund and have failed to issue a single report outlining the Fund's account total since December 2009. As of July 31, 2009, a Morgan Stanley Report stated that the total market value balance of the Fund was $4,139,711.71. See Exhibit 17. Then, on November 5, 2009, LAM forwarded Fund statements for August, September and October 2009. LAM advised that the statements were issued by Monarch Capital/Pershing because "we were forced to exit from Morgan Stanley." See Exhibit 19. According to the Monarch Capital Group LLC Brokerage Account Statement for the period 08/06/2009 to 08/31/2009, the account total was only $3,161,959.91. See Exhibit 20.

Defendants never explained why they "were forced to exit from Morgan Stanley," but the sudden account drop of $977,751.80 is highly troublesome. One month later, plaintiff received its last statement from the defendants indicating that the account balance was now $3,204,684.52. See Exhibit 21. Nearly 8 months have passed since plaintiff received a report

regarding the Fund's activity. Moreover, requests for account information have been either met with silence (Exhibit 23) or formally rebuked (Exhibit 26).

"The existing estate" is in jeopardy. Defendants promised to liquidate and failed to do so. They failed to account for a near $1,000,000 reduction in the Fund in one month. They failed to explain why the third-party administrator Morgan Stanley "forced them out." Defendants have failed to report upon the Fund's activities since December 2009. Defendants clearly are incapable of liquidating the Fund to repay the investors and outside help is required. This Court has previously held that a receiver is permitted to participate in a plan for liquidation. See SEC v. Byers, 637 F. Supp. 2d 166, 176 (S.D.N.Y. 2009). Therefore, to the extent that liquidation has actually commenced, this does not serve as a roadblock. A receiver must be immediately appointed to protect the Fund's remaining assets and to guide the Fund through liquidation.

## II. DEFENDANT'S MOTION TO DISMISS MUST BE DENIED

Plaintiff's Amended Verified Complaint amply pleads all allegations and therefore, defendants' motion must be denied. The primary counts relevant to the instant motion are plaintiff's 18th and 19th Counts. Plaintiff alleges Defendants violated the Securities Exchange Act of 1934 and have specifically brought a claim pursuant to Rule 10b-5. Defendants essentially argue that these two counts have not been sufficiently pled and therefore, the entire complaint must be dismissed. However, plaintiffs have sufficiently pled these security violation allegations.

### A. The Alleged Facts Must be Read in A Light Most Favorable to Plaintiff

The standard of review weighs heavily in favor of a plaintiff on a motion to dismiss. A complaint must be sustained unless "it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). Moreover, facts alleged in a complaint must be read in the light most favorable to the Plaintiff and the allegations must be accepted as true. H.J., Inc.v. Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989). In addition, a court must "draw all reasonable inferences in the plaintiff's favor." Merritt v. Shuttle, Inc., 245 F. 3d 182, 186 (2d Cir. 2001). On a motion to dismiss, the appropriate inquiry is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support those claims." Harriman v. I.R.S., 233 F.Supp. 2d 451, 456 (E.D.N.Y. 2002); accord Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) abrogated by Harlow v. Fitzgerald, 457 U.S. 800 (1982) on other grounds. Therefore, the defendants must surmount incredible deference to the plaintiff to succeed in the instant motion.

### B. *The Securities Fraud Claims are Adequately Pled*

While the standard to plead securities fraud is higher than a notice pleading standard, the plaintiffs have adequately satisfied the standard here. As this Court previously held in Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007) that "[a] Rule 10b-5 plaintiff must plead fraud with particularity so that defendants have 'a reasonable opportunity to answer the complaint and . . . adequate information to frame a response." Relying on ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. N.Y. 2007), this Court also found that "[a] securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." Plaintiff's Amended Verified Complaint satisfies all of these standards.

First, the Amended Verified Complaint has identified the statements that the plaintiff contends were fraudulent. For example, defendants misrepresented the time within which redemption proceeds would be supplied. It was specifically stated that a redeeming Shareholder would receive 90% of its redemption proceeds within 10 Business Days after the Redemption Date.

Moreover, defendants misrepresented the total amount of the Fund. Defendants misrepresented that the Fund would close at $250 million and therefore plaintiff's investment of approximately $2 million would represent less than 1% of the Fund.

Defendants also misrepresented that it has no conflicts of interest which would affect trading or trading flexibility. Defendants misrepresented that it did not have any relationships which would affect its trading flexibility. Moreover, defendants misrepresented that it would resolve conflicts of interest in the favor of plaintiff.

Second, the Amended Verified Complaint has identified the speaker of these fraudulent statements. In identifying the speaker, the Amended Verified Complaint has also stated when and where these statements were made. It is specifically alleged that the Confidential Private Placement Memorandum ("CPPM") dated March 1, 2006 and the Due Diligence Questionnaire ("DDQ") dated March 21, 2006 contained the initial fraudulent statements regarding the time within which redemption proceeds would be supplied. See Amended Verified Complaint ¶¶10-59, Exhibit 1. These documents also contained the fraudulent statements regarding the lack of conflicts of interest.

As the authors of these documents, the defendants are well aware of how each of them was involved in the drafting of these papers. Nevertheless, even a cursory review of these documents establishes that both the CPPM and DDQ were drafted on behalf of the LAM

12

Opportunity Fund Ltd. Moreover, it appears from the face of the DDQ that Andrew J. Kunar individually assisted in drafting the DDQ. Therefore, the Amended Verified Complaint identifies the who, when and where with respect to the fraudulent statements regarding the time within which redemption proceeds would be supplied and the lack of conflicts of interest.

Also, Austin Lewis represented that the Fund would be closed at $250 million on June 26, 2006. See Exhibit 1. Therefore, Mr. Lewis has been identified as the speaker of the fraudulent statement regarding the total value of the Fund.

Finally, the Amended Verified Complaint clearly explains why the statements were fraudulent. For example, more than two years have passed since plaintiff properly requested its redemption proceeds. Defendants fraudulent stated that plaintiff would receive 90% of its proceeds within 10 days of its request. Here, more than 700 days have passed and plaintiff has yet to see $1 of its redemption proceeds. Also, defendants fraudulent stated that the Fund would close at $250 million and therefore plaintiff's investment of approximately $2 million would represent less than 1% of the Fund. However, it was later learned that the plaintiff's shares at issue represented approximately 72% of the Fund's Net Asset Value. Finally, defendants fraudulently stated that that it had no conflicts of interest which would affect trading or trading flexibility, but later confessed to be "insiders" which halted the ability to pay plaintiff its redemption proceeds. Therefore, plaintiff has sufficiently pled all facts regarding these security violations and this motion must be denied.

Despite these well pled facts and allegations, defendants have filed the knee-jerk reaction motion with boiler plate arguments. For example, defendants attempt to attack the sufficiently of the allegations regarding their own misrepresentations about the total amount of the Fund. Defendants claim the Amended Verified Complaint fails to "even state how much money others

13

invested in the Fund. All that is alleged is that as of November 20, 2008, more than two months after Plaintiff's requested redemption of its investment, its 'investment represented approximately 72% of the Fund's Net Asset Value." <u>See</u> Defendant's Brief, page 4.

Of course this argument is a red-herring. Plaintiff was induced into purchasing the Fund's shares with statements that it would be a $250 million fund. Plaintiff was interested in investing as a minority interest of a mere $2 million. Instead, plaintiff ends up carrying the overwhelming risk of the fund with 72% of the net asset value.

## **CONCLUSION**

For the foregoing reasons, a receiver should be appointed and defendants' motion should be denied.

Dated: October 13, 2010

SCHENCK, PRICE, SMITH & KING, LLP
*Attorneys for Plaintiff*

JPC/01107920

/s/ John P. Campbell
John P. Campbell (JC 8746)
Michael J. Marotte