```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  11/22/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CAYVEST GLOBAL MANDATE INC.,                    :
f/k/a CAYVEST US EQUITY, INC.,                  :
                                                :
                      Plaintiff,                :
                                                :    10 Civ. 695 (RMB)
            -against-                           :
                                                :    **DECISION & ORDER**
LEWIS ASSET MANAGEMENT CORP.,                   :
LAM OPPORTUNITY FUND, LTD, W.                   :
AUSTIN LEWIS, IV, ANDREW J. KUNAR,              :
and CHRISTOPHER WETHERHILL,                     :
                                                :
                      Defendants.               :
----------------------------------------------------------------x

**I.    Introduction**

On May 3, 2010, Cayvest Global Mandate, Inc. ("Plaintiff" or "Cayvest") filed an

amended complaint ("Amended Complaint") against LAM Opportunity Fund, Ltd. ("Fund");

Lewis Asset Management Corp. ("LAM"), the manager of the Fund; and directors of the Fund

W. Austin Lewis, IV ("Lewis"), Andrew J. Kunar ("Kunar"), and Christopher Wetherhill

("Board of Directors" or "Board," and together with LAM and the Fund, "Defendants").

Plaintiff alleges, among other things, that by failing to return to Plaintiff proceeds from

Plaintiff's investment in the Fund, Defendants are liable for violations of Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) ("Section 10(b)"), Rule

10b-5 promulgated thereunder ("Rule 10b-5"), and Section 20 of the Exchange Act, id. § 78t(a)

("Section 20"), as well as for common law breach of contract, breach of fiduciary duty, and

violations of New York securities laws.

On July 21, 2010, Defendants submitted a motion to dismiss the Amended Complaint

pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."),

arguing, among other things, that: (1) Plaintiff fails to state a claim under Section 10(b), Rule

10b-5, and Section 20 because it does not allege any actionable misstatements by Defendants or plead facts giving rise to a strong inference of scienter; and (2) "[w]ithout any valid federal claims, and a lack of complete diversity between the parties, there is no reason for the Court to retain jurisdiction of the remaining state law claims." (Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl., dated July 21, 2010 ("Defs. Mem."), at 6, 9, 13.)

On October 13, 2010, Plaintiff submitted a brief in opposition to Defendants' motion to dismiss arguing, among other things, that the Amended Complaint has identified the statements that Plaintiff contends were fraudulent, including statements relating to "the time within which redemption proceeds would be supplied," "the total amount of the Fund," and Defendants' conflicts of interest "which would affect trading or trading flexibility," and that Plaintiff sufficiently pleads scienter by alleging that the "total illiquidity of investments just two years after formation [of the Fund] shows a reckless disregard for the stated investment objectives and requirements for share redemption." (Pl.'s Mem. of Law in Supp. of Cross-Mot. for Appointment of Receiver and in Opp'n to Defs.' Mot. to Dismiss, dated Oct. 13, 2010 ("Pl. Opp'n"), at 11–13; Pl.'s Mem. of Law in Further Supp. of Cross-Mot. for Appointment of Receiver and in Opp'n to Defs.' Mot. to Dismiss, dated Nov. 8, 2010 ("Pl. Reply"), at 5.)[1] Plaintiff does not respond to Defendants' state law jurisdictional argument but does cross-move for appointment of a receiver "to protect the Fund's remaining assets and to guide the Fund through liquidation." (Pl. Opp'n at 10.)

The parties waived oral argument.

---

[1]     On November 1, 2010, Defendants filed a reply. (Defs.' Reply Mem. in Further Supp. of Defs.' Mot. to Dismiss, dated Nov. 1, 2010 ("Defs. Reply").)

2

**For the reasons set forth below, Defendants' motion to dismiss is granted.[2]**

## II.   Background

For purposes of this motion, the allegations of the Amended Complaint are taken as true. See Almonte v. City of Long Beach, 478 F.3d 100, 104 (2d Cir. 2007).

Plaintiff is a corporation organized under the laws of the Cayman Islands, with its principal place of business in George Town, Cayman Islands. (See Am. Compl. ¶ 1.) The Fund is a Bermuda "exempted company" registered as a (regulated) mutual fund with the Bermuda Monetary Authority. (Am. Compl. ¶ 3.) LAM, the Fund's investment advisor, is a corporation organized under the laws of the State of Delaware with its principal place of business in New York City. (See Am. Compl. ¶¶ 2, 4.)

In 2006 and 2007, Plaintiff invested approximately $1.9 million in the Fund pursuant to a Confidential Private Placement Memorandum, dated March 1, 2006 ("CPPM"), which states, among other things, that "a Shareholder may request redemption of all or part of his [shares]" and "will generally receive ninety percent (90%) of his . . . redemption proceeds within ten (10) Business Days . . . and the remaining ten percent (10%) within thirty (30) Business Days." (Am. Compl. ¶¶ 11, 16–18, 20, 22.) The CPPM also states that the Fund's management "may from time to time provide a broad range of investment advisory, consulting and other services to companies which are . . . the subject of an investment in the Fund," under which circumstances the Fund's management "would not be able to advise the Fund . . . or to purchase or sell on behalf of the Fund." (Aff. of John P. Campbell, dated Oct. 13, 2010 ("Campbell Aff."), Ex. 2 at 32.)

---

[2]      The Court is not here ruling upon the ultimate merits of Plaintiff's state law fraud and breach of contract claims.

On or about July 15, 2005, Defendants completed a Due Diligence Questionnaire ("DDQ") for Plaintiff which provides background information about LAM and the Fund. (Am. Compl. ¶ 11; see Campbell Aff., Ex. 4.) The DDQ states: "Please describe any current or potential conflict of interest or relationships which may affect [the Fund's] trading, trading flexibility, e.g. associated with a broker/dealer," to which Defendants responded, "None." (Campbell Aff., Ex. 4 at 17.) The CPPM also states that "Messrs Seward & Kissel serve as counsel to the Fund and [LAM] in connection with matters pertaining to U.S. law." (Campbell Aff., Ex. 2 at 64.)

Plaintiff contends that on June 26, 2006, Lewis represented to Plaintiff that the Fund would close at \$250 million, causing Plaintiff to believe its investment in the Fund would comprise approximately 1% of the Fund. (Am. Compl. ¶¶ 27–28.) In fact, according to Plaintiff, Plaintiff's investment in the Fund represented "approximately 72% of the Fund's Net Asset Value" as of November 20, 2008. (Am. Compl. ¶ 135.)

On or about August 19, 2008, Plaintiff provided a written request for redemption of all of its shares in the Fund ("Redemption Proceeds") (see Am. Compl. ¶ 46) which, as of October 31, 2008 (the redemption date), were valued at \$1,907,782.37. (See Am. Compl. ¶ 48.) Plaintiff alleges that "[a]fter the Fund failed to deliver the Redemption Proceeds in a timely manner, Cayvest further demanded in writing that the Redemption Proceeds be wired to Cayvest by November 21, 2008." (Am. Compl. ¶ 50.)

By email, dated November 17, 2008, Kunar told Cayvest that LAM had commenced liquidation of the Fund's investments in order to provide the Redemption Proceeds to Plaintiff. (See Am. Compl. ¶ 51.) By email, dated November 23, 2008, Lewis confirmed that "the redemption can be made in full by the end of this year," that the "money is safe," but that the

4

Fund could not liquidate the Redemption Proceeds because "[our] hands are tied as we are insiders, on the Board of Directors or significant shareholders." (Am. Compl. ¶¶ 52, 137.)

By letter, dated November 25, 2008, Lewis advised Cayvest that the Fund's Board of Directors had decided to liquidate the entire Fund and return all investors' capital (see Am. Compl. ¶ 53), and on June 17, 2010, LAM informed Plaintiff that the Fund was being placed "into voluntary liquidation" with Leman Management Limited, a Bermuda company, acting as liquidator (Campbell Aff., Ex. 24).

On November 27, 2008, counsel for Cayvest requested confirmation from the Fund concerning the Board's decision to liquidate and Cayvest's demand for the Redemption Proceeds. (See Am. Compl. ¶ 54.) By letter, dated March 3, 2009, LAM stated that liquidation of the Fund "is taking a bit longer than expected." (Campbell Aff., Ex. 10.) On August 11, 2009, Lewis informed Plaintiff that LAM "is now considered an 'insider'" to the Fund's largest shareholder and that "liquidating [Cayvest's] position at this point would not be in the best interest of . . . Cayvest" and others. (Campbell Aff., Ex. 18.)

On March 4, 2009, in response to Plaintiff's inquiry, attorneys at Seward & Kissel contacted Plaintiff's counsel to advise that they "were not representing the Fund, had never represented the Fund, and had no knowledge of the matters at hand." (Aff. of Michael J. Marotte, dated Oct. 13, 2010 ("Marotte Aff."), ¶ 7.)

Plaintiff alleges that Defendants' conduct provides a strong inference of fraud because, among other things, Defendants knew they would "benefit[] by failing to provide [P]laintiff with its Redemption Funds"; Defendants invested recklessly as evidenced by the Fund's inability "to redeem [Plaintiff's] shares for a period of almost two years"; and "the total illiquidity of

5

investments just two years after formation shows a reckless disregard for the stated investment objectives and requirements for share redemption." (Am. Compl. ¶¶ 138–142.)

Plaintiff alleges that Defendants' fraudulent actions "caused [P]laintiff's loss in not being able to receive its investment; [that] Plaintiff would not have entered into the detrimental investment but for Defendants' fraud"; and that Defendants' "actions and inactions" caused "a sudden drop in [the Fund's] value." (Am. Compl. ¶¶ 143, 149, 151.)

On March 20, 2009, LAM advised Plaintiff that the total value of the Fund was $2.2 million and that "no monies [have been] wired out of the account since the redemption date." (Campbell Aff., Ex. 12.)

III.    **Legal Standard**

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "To state a claim under [Section] 10(b) and the corresponding Rule 10b-5, a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Util. Co., 228 F.3d 154, 161 (2d Cir. 2000). A plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); see Novak v. Kasaks, 216 F.3d 300, 310 (2d Cir. 2000). The "scienter" element of a claim under Section 10(b) and Rule 10b-5 "can be satisfied by a strong showing of reckless disregard for the truth." S. Cherry, 573 F.3d at 109.

6

A plaintiff pleading loss causation must allege both "transaction causation, i.e., that but for the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, i.e., that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." Pro Bono Invs., Inc. v. Gerry, No. 03 Civ. 4347, 2005 U.S. Dist. LEXIS 22348, at *35–37 (S.D.N.Y. Sept. 30, 2005); see Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172–73 (2d Cir. 2005).

"[I]n a case where foreign parties are involved, diversity is destroyed where there are aliens on one side of the litigation, and citizens and aliens on the other side." Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002).

**IV.    Analysis**

**(1) Federal Securities Law Claims**

To adequately plead a material misstatement under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Novak, 216 F.3d at 306; see 15 U.S.C. § 78u-4(b)(l); In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 69–70 (2d Cir. 2001).

Plaintiff fails to satisfy the pleading standard of the PSLRA. Plaintiff's principal contention – i.e., that Defendants failed to timely (if at all) return the Redemption Proceeds – may present a state law breach of contract claim but does not support a Federal securities action. That is, Plaintiff's allegation that "Defendants fraudulent[ly] stated [in the CPPM] that [P]laintiff would receive 90% of its proceeds within 10 days of its request" fails to demonstrate that Defendants knew the statement in the CPPM was false when it was made in 2006. (Pl. Opp'n at 13); see S. Cherry, 573 F.3d at 112. Plaintiff unpersuasively urges the Court to infer that,

7

because "more than 700 days have passed and [P]laintiff has yet to see $1 of its [R]edemption [P]roceeds," Defendants violated the Federal securities laws at the outset of their contract. (Pl. Opp'n at 13.) But a competing inference rationally drawn from the facts alleged is that Defendants may have intended to honor the contract at the outset but, thereafter, did not have the ability to do so. S. Cherry, 573 F.3d at 111; see ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007) ("While the failure to carry out a promise in connection with a securities transaction might constitute breach of contract, it does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform.") (internal quotation marks omitted); Ebusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC, No. 08 Civ. 9101, 2009 WL 5179535, at *17 (S.D.N.Y. Dec. 29, 2009) (dismissing breach of contract claim "masquerading" as a fraud claim).

Similarly, Plaintiff's allegation that Defendants "fraudulent[ly] stated that the Fund would close at $250 million," may reflect Defendants' expectation at the time the statement was made but it cannot be concluded that this "forward-looking" proposition involved scienter or recklessness at the time the statement was made. (Pl. Opp'n. at 13); see Avon Pension Fund v. GlaxoSmithKline PLC, 343 F. App'x 671, 673 (2d Cir. 2009) (forward looking statement reflecting defendants' "confidence in the future of their company" does not support inference of scienter). Defendants point out that Plaintiff does not allege whether or when the Fund ever closed or how much money others invested in the Fund. (Def. Mem. at 4); see Slayton v. Am. Express Co., 604 F.3d 758, 776 (2d Cir. 2010) ("plaintiffs may not plead fraud by hindsight"); Inst. Inv. Group v. Avaya, Inc., 564 F.3d 242, 274 (3d Cir. 2009) ("In the case of the forward-looking statements, however, an inference of recklessness does not avail plaintiffs – that is, it

8

must be placed on the nonculpable-explanation side of the balance when we weigh competing inferences.").

Even assuming that the Fund had closed and that when it did it became clear to Plaintiff that the Fund was much smaller (and therefore riskier) than Plaintiff believed it would be, a competing (non-fraudulent) inference is that Defendants were unable to drum up as many investors as they originally, and perhaps over-optimistically, intended. See Avaya, Inc., 564 F.3d at 274; In re Sec. Capital Assur. Ltd. Sec. Litig., No. 07 Civ. 11086, 2010 WL 1372688, at *27 (S.D.N.Y. Mar. 31 2010) ("[S]ection 10(b) was not designed to regulate corporate mismanagement nor to prohibit conduct which does not involve manipulation or deception." (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982))).

Plaintiff's allegation that Defendants misrepresented that they had no conflicts of interest (and later claimed they could not deliver the Redemption Proceeds because they were "insiders") (Am. Compl. ¶ 137), is inconsistent with the CPPM which acknowledges that conflicts of interest could arise which might prevent LAM from advising the Fund or purchasing or selling on behalf of the Fund. (See Campbell Aff., Ex. 2 at 32); Bond Opportunity Fund v. Unilab Corp., 87 F. App'x 772, 774 (2d Cir. 2004). And, in any event, "[c]onflicts of interest present opportunities for fraud, but they do not, standing alone, evidence fraud – let alone furnish a basis sufficiently particular to support a fraud complaint." Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 415 (2d Cir. 2008); see Lentell, 396 F.3d at 170.

Plaintiff's allegation that the CPPM (falsely) represented that the Fund would be represented by attorneys Seward & Kissel (who later stated they "were not representing the Fund, had never represented the Fund, and had no knowledge of the matters at hand") does plausibly give rise to the inference that Defendants misrepresented the Fund's legal adviser.

9

(Marotte Aff. ¶ 7); see, e.g., Louros v. Kreicas, 367 F. Supp. 2d 572, 588 (S.D.N.Y. 2005); see also ECA Local 134 1BEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 204 (2d Cir. 2009) (statement is immaterial considering "qualitative factors"). Plaintiff has also failed adequately to plead loss causation. Gerry, 2005 U.S. Dist. LEXIS 22348, at *35. That is, Plaintiff has not adequately alleged that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered." Id. Indeed, it appears that "the losses allegedly sustained by [Plaintiff] in connection with the [Fund] have nothing to do with any misrepresentations regarding" the Fund's legal counsel. Id. at *37; Lentell, 396 F.3d at 172–73.[3]

Because Plaintiff's Section 20 claims are "necessarily predicated on a primary violation of securities law, . . . these secondary claims must also be dismissed." Rombach v. Chang, 355 F.3d 164, 177–78 (2d Cir. 2004).

### (2) State Law Claims

This action cannot proceed as a "diversity" matter because the Fund is indispensable to the litigation, and its presence in the case destroys diversity (as urged by Defendants). See CP Solutions PTE, Ltd. v. Gen. Elec. Co., 553 F.3d 156, 158 (2d Cir. 2009); (Defs. Mem. at 12.) The parties do not dispute that "on one side [of the litigation] there are citizens [LAM, Kunar, and Lewis] and aliens [the Fund] and on the opposite side there are only aliens [Cayvest]."[4] See CP Solutions, 553 F.3d at 158 (quoting Universal Licensing, 293 F.3d at 581) ("Diversity

---

[3]     Plaintiff's allegation that because Defendants' "management and incentive fees are directly proportional" to the value of the Fund, they knew they would benefit "by failing to provide Plaintiff with its Redemption Funds" is not persuasive (Am. Compl. ¶¶ 140, 142), because a "general wish by corporate officers to preserve their executive positions or to increase their compensation is not sufficiently concrete to allege [a motive or opportunity to commit fraud]." In re Rhodia S.A. Sec. Litig., 531 F. Supp. 2d 527, 549 (S.D.N.Y. 2007).

[4]     There are no allegations as to Defendant Wetherhill's citizenship.

jurisdiction does not exist, . . . where on one side there are citizens [of a State] and aliens and on the opposite side there are only aliens.'").

Diversity jurisdiction could only be maintained if the Court were to drop the Fund as a party to the litigation. Fed. R. Civ. P. 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not "indispensable" under Fed. R. Civ. P. 19(b). See id. at 159; Global Detection and Reporting, Inc. v. Securetec Detektions-Sys. AG, No. 08 Civ. 5441, 2008 WL 5054728, at *1–2 (S.D.N.Y. Nov. 21, 2008).[5]

The Court finds, under Fed. R. Civ. P. 19(b), that the Fund is indispensable to the litigation and should not be dropped to maintain diversity jurisdiction because, among other reasons, the individual Defendants would be prejudiced if they (alone) were subject to liability for Plaintiff's alleged damages. The Fund is the entity alleged to hold Plaintiff's investment and Defendants "have significant interests in avoiding multiple litigation in state and federal forums, [the Fund] has interests in this litigation even if it is not a party, and the public has a significant interest in avoiding wasteful multiplicitous litigation." Securetec, 2008 WL 5054728, at *2; see CP Solutions, 553 F.3d at 159 (The "relevant question" is whether parties will be prejudiced in the absence of the person.).

## V.    Conclusion and Order

For the reasons stated herein, Defendants' motion to dismiss the Federal securities law

---

[5]      A party's indispensability is determined under the four factors of Fed. R. Civ. P. 19(b): (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit. See also CP Solutions, 553 F.3d at 159.

claims is granted.  Defendants' state law claims are dismissed without prejudice to litigating

them in state court.  (See infra note 2.)  The Clerk of the Court is respectfully requested to close

this case.

Dated:  November 22, 2010
       New York, New York

$$RMB$$

**RICHARD M. BERMAN, U.S.D.J.**